IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

MARK SNODGRASS,

                Plaintiff,

v.                                      CIVIL ACTION NO.   2:25-cv-00301

HARTFORD UNDERWRITERS INSURANCE
COMPANY, et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is a Motion to Bifurcate and Stay filed by Defendants Hartford Underwriters Insurance Company ("Defendant Hartford") and Sean Bivens ("Defendant Bivens") (collectively, "Defendants"). (ECF No. 21.) For the reasons discussed herein, the motion is **DENIED**.[1]

### I.     BACKGROUND

This action involves an insurance dispute between Defendants and Plaintiff Mark Snodgrass ("Plaintiff"). (*See* ECF No. 1-1.) According to the Complaint, a windstorm occurred on April 2, 2024, with winds allegedly reaching speeds up to one-hundred fifteen miles per hour. (*See id*. at 10, ¶ 10.) As a result of this storm, Plaintiff claims that the building of his business (the "Property") suffered damage to its roof and experienced flooding within. (*Id*.) Plaintiff

---

[1] The Defendants also have an unopposed motion pending before the Court to extend the discovery deadline for 30 days past the date of this order. (ECF No. 32.) For good cause shown, the Court **GRANTS** the motion.

1

maintains that at this time, the Property was insured by a Hartford policy (the "Policy"), which covered storm loss.  (*Id*. at 9, ¶ 7–8.)

Following the storm, Plaintiff notified Defendant Hartford of the storm loss and his claim for damages to the Property.  (*Id*. at 10, ¶ 13.)  The claim was then assigned to Defendant Bivens for investigation and handling.  (*Id*. at 10, ¶ 14.)  Defendant Hartford subsequently sent an engineer to the Property to conduct an inspection of the Property, take photos, and construct a report.  (*Id*. at 10, ¶ 15–16.)  The resulting report included photos depicting the alleged damages to the Property, including the damage to the roof, water damage, and damage to the office.  (*Id*. at 10, ¶ 17.)

Defendant Hartford and Defendant Bivens then sent a denial letter to Plaintiff, detailing their conclusion that the damages to the Property were the result of "age-related wear and tear" and denied payment for the damages allegedly arising from the storm.  (*Id*. at 10, ¶ 18.)  Plaintiff disputed this finding and sent the Defendants an estimate of $30,000.00, which evidently accounted for the amount necessary to remediate the roof damage.  (*Id*. at 11, ¶ 20.)  In response, the Defendants sent an additional denial letter to Plaintiff, reiterating that the storm damages to the Property were the result of "age-related wear and tear" and again denying payment. (*Id*. at 11, ¶ 21.)

Consequently, on April 2, 2025, Plaintiff initiated this lawsuit in the Circuit Court of Kanawha County, West Virginia.  (*See* ECF No. 1-1.)  The Complaint asserts three causes of action against Defendant Hartford and one cause of action against Defendant Bivens.  (*Id*. at 5–9.)  Count I, which alleges a claim for breach of contract, is premised on Defendant Hartford's failure to pay benefits to Plaintiff for the storm loss damage to the Property.  (*Id*. at 13, ¶ 38.)

Count II, which alleges first-party common law bad faith, states that Defendant Hartford breached its duty of good faith and fair dealing by: (1) failing to conduct an adequate, timely, and thorough investigation of Plaintiff's claim; (2) failing to conduct a complete investigation and inspection regarding the cause of the storm loss damages to the Property; (3) failing to identify the full extent of the storm loss damages to the Property; (4) refusing to pay for the storm loss without a factual or legal basis; and (5) favoring its own interests over the interests of the insured. (*Id*. at 13, ¶ 42.) Count III asserts a claim under the West Virginia Unfair Trade Practices Act ("UTPA"), based on the Defendants' failure to conduct a prompt and thorough investigation of Plaintiff's claim; failing to provide a fair settlement offer; and misrepresenting facts concerning the extent of damages. (*Id*. at 15, ¶ 48–51.)

Defendant removed this action on May 7, 2025. (ECF No. 1.) Defendant then filed the pending motion for bifurcation and stay on August 22, 2025. (ECF No. 21.) Plaintiff filed a response, (ECF No. 23), and Defendant filed a reply, (ECF No. 24). As such, this motion is fully briefed and ripe for adjudication.

## II.     LEGAL STANDARD

In pertinent part, Federal Rule of Civil Procedure 42 provides as follows:

> For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial.

Fed. R. Civ. P. 42(b).

The moving party has the burden of persuasion that bifurcation is appropriate. *Lester v. Homesite Ins. Co. of the Midwest*, No. CIV.A. 1:14–20361, 2014 WL 6682334, at *1 (S.D. W. Va. Nov. 25, 2014) (citation omitted). Under Rule 42(b), "the granting of separate trials is within the

3

sound discretion of the trial judge." *Bowie v. Sorrell*, 209 F.2d 49, 51 (4th Cir. 1953). Separating issues for trial, however, "is not to be routinely ordered." Fed. R. Civ. P. 42(b) advisory committee's note.

In turn, Federal Rule of Civil Procedure 26(c) provides, in pertinent part, as follows:

> The court may, for good cause, issue an order to protect a party or person from . . . undue burden or expense, including one or more of the following: (A) forbidding the disclosure or discovery; [or] (B) specifying terms, including time and place . . . for the disclosure or discovery[.]

Fed. R. Civ. P. 26(c)(1)(A), (B).

### III. DISCUSSION

In this case, the Defendants seek to (1) bifurcate Plaintiff's common law and statutory bad faith claims in Counts Two and Three (collectively, "Bad Faith Claims") from Plaintiff's breach of contract claim in Count One and (2) stay discovery of the Bad Faith Claims pending resolution of the contract claim. (ECF No. 21 at 1; *see also* ECF No. 24 at 1, n.1 (clarifying requests).) The Defendants argue that resolution of the contract claim is a necessary prerequisite to determining the Bad Faith Claims and thus should be decided first as a matter of law. (ECF No. 24 at 10.) The Defendants reason that this would promote judicial economy by potentially eliminating Plaintiff's remaining claims. (ECF No. 22 at 4.) The Court disagrees.

To start, the Defendants' primary argument is that a court's decision to bifurcate should predominately hinge on whether a threshold issue has the potential to dispose of the entire case. (*See generally* ECF No. 24 at 4–6.)[2] While this is an important consideration, it is simply one of

---

[2] For support, the Defendants rely on numerous cases not within this jurisdiction in which requests for bifurcation and stay were granted, as well as the frequency with which Plaintiff's counsel has filed or joined in such motions. (ECF No. 24 at 2–4, n.2.) This argument is not compelling. The sheer number of favorable rulings to requests to bifurcate and stay, absent any analysis of factual similarity to the present case, are not instructive. Nor does highlighting an opposing attorney's history of filing similar motions carry persuasive weight.

many. *See Azar v. State Farm Mut. Auto. Ins. Co.,* No. 2:22-CV-00427, 2023 WL 145419 at *3 (S.D. W. Va. Jan. 10, 2023). If it were the most decisive inquiry, any first-party insurance dispute would require mandatory bifurcation whenever there is a possibility that a coverage determination might moot the remaining claims. Yet, both the West Virginia Supreme Court of Appeals ("WVSCA") and this Court have expressly rejected mandatory bifurcation in first-party actions. *See Light v. Allstate Ins. Co.*, 506 S.E.2d 64, 72 (W. Va. 1998); *see also Lycans v. Nationwide Prop. & Cas. Ins. Co.*, No. 2:24-CV-00707, 2025 WL 2609565 at *3 (S.D. W. Va. Sept. 9, 2025).

In fact, resolution of the breach of contract claim would not necessarily extinguish the viability of Plaintiff's UTPA claim. Under West Virginia law, a court must find that coverage exists in order for a plaintiff to pursue common law bad faith claims against an insurance company. *See Cava v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 753 S.E.2d 1, 9 n. 6 (W. Va. 2013). However, a court need not find that coverage exists in order for a plaintiff to pursue statutory bad faith claims against an insurance company. *See McCormick v. Allstate Ins. Co.*, 475 S.E.2d 507, 514–15 (W. Va. 1996). Thus, two cases could proceed—one to determine coverage and one to determine, at least, liability under the UPTA—regardless of whether coverage exists.

Further, even though resolution of coverage could be dispositive of Plaintiff's common law bad faith claim, bifurcation and stay of discovery is not appropriate. The WVSCA has established six factors for consideration to guide a court's exercise of discretion concerning the propriety of a bifurcation and stay: (1) the number of parties in the case, (2) the complexity of the underlying case against the insurer, (3) whether undue prejudice would result to the insured if discovery is stayed, (4) whether a single jury will ultimately hear both bifurcated cases, (5) whether partial discovery is feasible on the bad faith claim, and (6) the burden placed on the trial court by imposing

5

a stay on discovery. *Light*, 506 S.E.2d at 72. The proponent of the stay and bifurcation bears the burden of persuasion. *Id*.

Here, the *Light* factors do not support bifurcation. First, there are only three parties to this case: Plaintiff, Defendant Hartford, and Defendant Bivens. Defendant Bivens, Hartford's employee, is represented by the same counsel and was alleged to be involved in the overarching issue of coverage denial. Second, the facts and claims at issue are not—at this juncture—complex. All claims against the Defendants stem from facts underlying the cause of damage to the Property and the alleged deficiencies in the investigative efforts and settlement process.

The Defendants argue that the remaining factors favor bifurcation because it will not lead to duplicative efforts. They assert the issue of coverage is a narrow question of law, which requires more limited discovery in comparison to bad faith claims. (*See* ECF No. 24 at 10.) While it is true that determination of insurance coverage is typically a legal question when the facts are not in dispute, the Defendants fail to appreciate that the facts in this matter are in dispute. The parties disagree as to whether the Property suffered a covered loss, i.e., storm damage, or instead experienced loss due to ordinary wear and tear. (ECF No. 23 at 5.) To establish coverage, Plaintiff intends to present testimony that the Property suffered storm damage to refute Defendant Hartford's expert's opinion that the damage resulted from ordinary wear and tear. (ECF No. 24 at 5.) Thus, coverage discovery will necessarily overlap with discovery for the Bad Faith Claims, because all three claims involve facts surrounding the cause of loss.

Accordingly, under the third *Light* factor, bifurcating and staying discovery would therefore risk prejudicing Plaintiff by creating unnecessary delay and duplicative discovery, including the possibility of having to depose Defendant Hartford's representatives' multiple times.

In turn, even if partial discovery is feasible under the fifth factor, it is "less practical than permitting 'unitary discovery in order to prevent deposing witnesses twice' and to avoid other redundancies." *Blankenship v. Jordan*, No. CV 3:19-0372, 2019 WL 4197115, at *4 (S.D. W. Va. Sept. 3, 2019) (citations omitted).

Finally, the fourth and sixth factors likewise weigh against bifurcating and staying discovery because it could result in "two voir dires, two phases of discovery and another round of seemingly endless motion filing and responses, all in addition to two separate trials." *Light v. Allstate Ins. Co.*, 182 F.R.D. 210, 213 (S.D. W. Va. 1998). The Defendants argue that it would be more wasteful "to conduct discovery that may prove unnecessary, rather than to wait and see if it becomes necessary." (ECF No. 24 at 11.) While certainly a possibility, any promotion of judicial economy premised on this point is rooted in the speculative assumption that the Defendants will prevail on the contract claim.

Speculation of success is insufficient, given that "[n]early every case that comes before the Court has a threshold issue that upon resolution in one or the other parties' favor might obviate other claims." *Sheppard v. Direct Gen. Ins. Co*., No. CV 3:16-11418, 2017 WL 11249431 *2 (S.D. W. Va. June 19, 2017). Instead, "[t]he proponent of bifurcation must show more than the ordinary to convince the Court to disrupt the customary course of litigation[.]" *Id*. The Defendants have failed to make that showing in the instant case. As such, the *Light* factors weigh heavily against bifurcation.

In light of these considerations, the bifurcation and stay of discovery is unwarranted. Accordingly, to the extent that Defendant's motion to bifurcate applies to discovery, it is **DENIED**. Nevertheless, to the extent that Defendant's motion seeks to bifurcate the issues for trial, the motion

is **DENIED WITHOUT PREJUDICE**, subject to refiling after completion of discovery. *See Wilkinson v. Mut. of Omaha Ins. Co.*, No. 2:13-CV-09356, 2014 WL 880876, at *2 (S.D. W. Va. Mar. 6, 2014) (Goodwin, J.) (collecting cases in which courts have done the same).

### IV.     CONCLUSION

For these reasons, Defendant's Motion for Bifurcation and Stay, (ECF No. 21), is **DENIED** insofar as it applies to discovery. The parties are **ORDERED** to proceed with discovery on all claims.  However, the motion is **DENIED WITHOUT PREJUDICE** to the extent Defendant seeks to bifurcate the issues for trial.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:     January 6, 2026

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE